**Cecil L. PHELPS, Appellant,**

v.

**Sgt. ANDERSON and Officer LANGFORD, Appellees.**

No. 79–6231.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 10, 1982.

Decided Feb. 22, 1983.

Eric H. Zagrans, Case Western Reserve University School of Law, Cleveland, Ohio (Arter & Hadden, Cleveland, Ohio, on brief), for appellant.

Dennis Montgomery, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., James T. Moore, III, Senior Asst. Atty. Gen., Richmond, Va., on brief), for appellees.

Before WIDENER and HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Cecil L. Phelps, a Virginia prisoner, appeals from the grant of summary judgment in favor of two prison officials. Phelps complains they temporarily deprived him of his television without due process of law by confiscating it improperly and failing to return it promptly after he proved he owned it. We affirm the judgment for reasons that differ in part from the rationale of the district court.

The material facts are not in dispute. The officials mistakenly believed the television belonged to another prisoner. Over Phelps's protest, they took it from his cell and permitted the other prisoner to carry it with him when he was transferred to another Virginia prison. Phelps was charged and acquitted of illegally possessing the television. Although the adjustment committee ruled he was the owner, the television was not returned to him for nearly nine months.

Phelps then filed this action for damages. After consideration of affidavits filed by both parties, the district court held that the temporary loss of the television "does not rise to the level of a constitutional deprivation" cognizable under 42 U.S.C. § 1983.[1]

We agree with the district court that delivery of the television to the prisoner who was being transferred does not warrant relief. Confronted by the claims of two prisoners to the same property, the officers undertook to resolve the dispute promptly. They did not act fraudulently, maliciously, or arbitrarily. Though their decision proved to be mistaken, Phelps's assertion of ownership was soon vindicated at the hearing conducted by the adjustment committee. The prompt settlement of arguments between prisoners is an aspect of prison administration to which federal courts should defer. See Bell v. Wolfish, 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979).

For the purpose of this opinion, we must accept Phelps's claim that the officials wrongfully delayed returning the television after the adjustment committee ruled it belonged to him. Though Phelps was deprived of his property only temporarily by the negligence of the prison officials, he nevertheless has a cause of action under § 1983 if the deprivation was without due process of law. See Parratt v. Taylor, 451 U.S. 527, 533–35, 101 S.Ct. 1908, 1911–12, 68 L.Ed.2d 420 (1981); Fuentes v. Shevin, 407 U.S. 67, 84–86, 92 S.Ct. 1983, 1996–97, 32 L.Ed.2d 556 (1972). Parratt recognizes, however, that when, as here, the deprivation does not occur as the result of some established state procedure, due process may be satisfied by the availability of a postdeprivation remedy adequate to redress

---

1. Phelps also sought damages on the ground that he was falsely charged with illegal possession of the television. He does not seek reversal of the district court's dismissal of this claim.

the prisoner's loss. 451 U.S. at 543, 101 S.Ct. at 1916.

▮ Virginia law in effect when this incident occurred[2] imposed liability on a state employee for negligently performing a ministerial act. *Semler v. Psychiatric Institute,* 538 F.2d 121, 127 (4th Cir.1976); *see James v. Jane,* 221 Va. 43, 50–55, 267 S.E.2d 108, 112–14 (1980); *Lawhorne v. Harlan,* 214 Va. 405, 407, 200 S.E.2d 569, 571 (1973). After the adjustment committee decided Phelps owned the television, the officers lacked discretion to deprive Phelps of his property. Return of the television was a simple ministerial act to implement the ruling of the adjustment committee. Virginia tort law afforded Phelps a remedy against the officers for their negligence in performing the ministerial act of returning the television. Although the officers temporarily deprived Phelps of his television under color of state law, Virginia's tort law satisfies the due process clause of the fourteenth amendment. Phelps's § 1983 claim, therefore, was properly dismissed. *Parratt,* 451 U.S. at 537–43, 101 S.Ct. at 1913–16.

The prison grievance procedure in effect at the time of the incident[3] also provided an adequate postdeprivation remedy for Phelps.[4] Although the former guideline did not expressly provide for monetary awards for the negligent deprivation of property, it has been interpreted by prison officials to encompass this remedy.[5] We therefore conclude that the grievance procedure afforded sufficient due process to bar Phelps's § 1983 claim. *See Parratt,* 451 U.S. at 535–44, 101 S.Ct. at 1912–17.

AFFIRMED.

**2.** Virginia has recently enacted a new tort claims act, *see* Va.Code § 8.01–195.1 *et seq.* (Supp.1982), but it applies only to acts occurring on or after July 1, 1982.

**3.** Guideline 846 (1977).

Virginia has promulgated a new inmate grievance procedure, effective October 12, 1982. This procedure has been certified by the Attorney General of the United States as being in compliance with the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 *et seq.* If properly utilized by the prisoners and administered by the state, it may substantially reduce prison litigation.

**4.** Despite Phelps's contention to the contrary, the pleadings and supporting affidavits disclose no genuine issue as to any material fact concerning his failure to seek monetary damages through the grievance procedure.

**5.** For example, *Smith v. Kelly,* 679 F.2d 888 (4th Cir., 1982) (unpublished), discloses that a prisoner was awarded $135, the value he placed on property which prison officials negligently lost.