**Roy E. DANIELS, Appellant,**

v.

**Andrew WILLIAMS, Deputy, Appellee.**

**No. 82–6538.**

United States Court of Appeals,
Fourth Circuit.

Argued May 13, 1983.

Decided Aug. 24, 1983.

---

3. In the view we take, it is unnecessary to reach the Company's other contentions.

Louis James Licata, Third Year Law Student (Professor Stephen A. Saltzburg, University of Virginia Law School, Charlottesville, Va., on brief), for appellant.

Dennis A. Barbour, Roanoke, Va. (James W. Hopper, Gardner, Moss, Brown & Hopper, P.C., Roanoke, Va., on brief), for appellee.

Before HALL and SPROUSE, Circuit Judges, and TURK,* Chief Judge.**

TURK, Chief Judge:

Roy E. Daniels (Daniels), an inmate at the Richmond City Jail, brought this section 1983 action against Deputy-Sheriff Andrew Williams (Williams) alleging that he was injured when he slipped and fell on a pillow negligently left on the stairs by Williams. The district court granted Williams's motion for summary judgment, reasoning that under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Daniels's allegations failed to state a procedural due process claim because Virginia provided a meaningful postdeprivation remedy in the form of a common law negligence action. Daniels appeals on the grounds that *Parratt's* analysis concerning the adequacy of a postdeprivation remedy should not be applied to the deprivation of a nonproperty interest, and, even if it does apply, that the Virginia doctrine of sovereign immunity denies him an adequate postdeprivation remedy. We affirm the district court's dismissal of Daniels's action.

### A.

■ The plaintiff in *Parratt* alleged that he was deprived of property without due process of law when prison officials negligently lost his hobby kit. The Court agreed that the plaintiff had been deprived of property within the meaning of the fourteenth amendment. *Id.* at 536–537, 101 S.Ct. at 1913–1914. The Court held, however, that the plaintiff had not stated a claim for a violation of the due process clause of the fourteenth amendment. Rejecting the proposition that due process always requires a hearing before the initial property deprivation, Justice Rehnquist stated in a plurality opinion that a meaningful postdeprivation hearing satisfies the requirements of procedural due process in situations where the property deprivation does not result from established state procedure and the state cannot practically provide a meaningful predeprivation hearing. *Id.* at 540–541, 101 S.Ct. at 1915–1916. Applying this principle to the plaintiff's allegation that he was tortiously deprived of his property as a result of a state employee's random and unauthorized act, the Court concluded that the plaintiff was not deprived of property without due process of law because the state's statutory tort procedure provided him with a postdeprivation remedy that satisfied the requirements of procedural due process.[1] *Id.* at 543–544, 101 S.Ct. at 1916–1917.

■ Like the plaintiff in *Parratt,* Daniels alleges that he was injured by the negligence of a state employee. Unlike in *Parratt,* Daniels's claim is for bodily injury rather than for the loss of personal property. "Liberty" within the meaning of the

---

* Honorable James C. Turk, Chief United States District Judge for the Western District of Virginia, sitting by designation.

** Judge Sprouse was not present during oral argument; however, counsel agreed that he could participate by listening to the tapes.

1. Exhaustion of state judicial or administrative remedies is not a prerequisite to section 1983 actions, *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), except for those cases falling under the narrow exhaustion scheme embodied in 42 U.S.C. § 1997. *See Patsy v. Board of Regents of the State of* *Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). *Parratt* does not change this rule. An exhaustion requirement would merely require a plaintiff to exhaust his state remedies before bringing a section 1983 action in federal court. *Parratt,* by contrast, stands for the proposition that a plaintiff may sue only in state court if he fails to state a procedural due process claim under section 1983. Unlike an exhaustion requirement, which is based upon principles of comity, the *Parratt* analysis is based upon the concept that there is no constitutional violation if a plaintiff has not been deprived of a protected interest without due process of law.

fourteenth amendment includes the right to be free from "unjustified intrusions on personal security." *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). Bodily injury resulting from a state official's negligence therefore deprives a person of a liberty interest protected by the fourteenth amendment.[2] This case thus presents the question whether the *Parratt* analysis applies to nonproperty deprivations, such as a negligent deprivation of a liberty interest.

*Parratt* concerned a property interest; its scope, however, "cannot easily be limited to negligent deprivations of property." *Palmer v. Hudson,* 697 F.2d 1220, 1222 (4th Cir.1983), *cert. granted,* —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983). Because *Parratt's* underlying principle is that a postdeprivation hearing will satisfy procedural due process when there is no practical way to provide a predeprivation hearing, logic dictates that *Parratt* should also apply to a nonproperty deprivation for which a predeprivation hearing was impractical. Justice Rehnquist made no distinction in *Parratt* between property and nonproperty deprivations. Rather, the relevant distinction is between isolated acts of misconduct which are not amenable to prior control and deprivations resulting from established state procedure; this factor determines whether a meaningful postdeprivation remedy will satisfy the requirements of procedural due process.

In addition, application of *Parratt* to nonproperty deprivations such as Daniels's alleged bodily injury is consistent with the Court's stated goal in *Parratt* to provide courts with assistance in determining "the correct manner in which to analyze claims ... which allege facts that are commonly thought to state a claim for a common-law tort normally dealt with by state courts, but instead are couched in terms of constitutional deprivation and relief is sought under

§ 1983." *Id.* 451 U.S. at 533, 101 S.Ct. at 1912.

The conclusion that *Parratt* was intended to apply to all types of deprivations resulting from the unauthorized acts of state officials which are not amenable to prior review is further reinforced by the concurring opinion of Justice Powell. Justice Powell argued that the alleged negligent loss of the plaintiff's property by the state officials did not constitute a deprivation of property within the meaning of the fourteenth amendment. *Id.* at 546, 101 S.Ct. at 1918. And he criticized the Court's focus on the adequacy of the postdeprivation remedy because such would make the fourteenth amendment a font of tort law whenever a state failed to provide a remedy. *Id.* at 550, 101 S.Ct. at 1920. In so doing, however, he recognized that the Court's analysis applies to "negligent invasions of liberty or property interests." *Id.*

Moreover, *Ingraham v. Wright, supra,* is cited by the Court as being consistent with the approach taken in *Parratt.* 451 U.S. at 542 and 547, n. 1, 101 S.Ct. at 1916 and 1919, n. 1 (Powell, J., concurring in result). In *Ingraham,* the Court addressed the claim that corporal punishment in public schools violated due process. *See* 430 U.S. at 653, 97 S.Ct. at 1403. The Court held that corporal punishment in public schools did not deprive school children of liberty without due process of law because, among other things, "the traditional common-law remedies are fully adequate to afford due process." *Id.* at 672, 97 S.Ct. at 1413. *Parratt's* citation of *Ingraham* with approval is compelling evidence that the Court intended the *Parratt* analysis to apply to deprivations of liberty interests.

Not all the justices who joined in the Court's decision in *Parratt* believed that it applied to nonproperty deprivations. Justice Blackmun, with whom Justice White concurred, did "not read the Court's opinion as applicable to a case concerning depriva-

---

**2.** Some bodily injuries also implicate a protected property interest, as is recognized by the existence of a common law tort action to recover damages for negligently caused personal injuries. However, because *Parratt* expressly applies to negligent property deprivations, our analysis will focus on Daniels' claim that he was deprived of liberty without procedural due process.

tion of life or of liberty." 451 U.S. at 545, 101 S.Ct. at 1918. But Justices Blackmun and White offered no persuasive reason for their distinction between property and non-property deprivations. *Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), cited as different yet analogous precedent supporting this distinction, concerned a substantive due process claim, *see id.* at 502–03, 97 S.Ct. at 1937–38, and thus is distinguishable from cases, such as this one, involving alleged procedural due process violations.

Although Daniels concedes that not every liberty deprivation by a state official should be redressed by an action under section 1983, he stresses that the state has an affirmative duty to protect inmates because of the high level of state control in the prison environment. And he argues that *Parratt's* analysis should not apply to this case because a section 1983 remedy is the only way to ensure the state's compliance with this duty. We believe, however, that the Virginia courts are no less diligent than the federal courts in protecting inmates from state inflicted harm. Moreover, there is nothing in *Parratt* which lends support to

the proposition that its rationale applies differently to prisoners than to nonprisoners. Indeed, the fact that the plaintiff in *Parratt* was himself an inmate militates against the adoption of Daniels's proffered distinction.

■ Therefore, we hold that the *Parratt* analysis applies to deprivations of nonproperty interests which do not violate substantive constitutional rights, including negligent deprivations of the liberty interest in freedom from bodily injury. *See Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir. 1981), *aff'd sub nom. Kush v. Rutledge,* —— U.S. ——, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).[3]

Daniels alleges that Williams's negligence in leaving a pillow on the stairs deprived him of a liberty interest. There is no allegation that Daniels was injured as a result of some established state procedure. Nor was it possible for the state to provide a predeprivation hearing since the state could not predict when the alleged loss would

---

**3.** *See also Hickman v. Hudson,* 557 F.Supp. 1341 (W.D.Va.1983); *Juncker v. Tinney,* 549 F.Supp. 574 (D.Md.1982); *Holmes v. Wampler,* 546 F.Supp. 500 (E.D.Va.1982); *Henderson v. Counts,* 544 F.Supp. 149 (E.D.Va.1982); *Peery v. Davis,* 524 F.Supp. 107 (E.D.Va.1981); *Eberle v. Baumfalk,* 524 F.Supp. 515 (N.D.Ill. 1981); *Meshkov v. Abington Township,* 517 F.Supp. 1280 (E.D.Pa.1981); *but see Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177 (M.D.Tenn.1982); *Haygood v. Younger,* 527 F.Supp. 808 (E.D.Cal.1981).

We emphasize that our holding today is not intended to expand *Parratt's* scope to every section 1983 action which resembles a state tort action. *Parratt* applies to only procedural due process claims involving deprivations that do not result from established state procedures and for which the state cannot practically provide a predeprivation hearing. Section 1983 still provides a remedy for procedural due process violations resulting from some established state procedure or for which a prior hearing is practical, *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434–437, 102 S.Ct. 1148, 1157–1158, 71 L.Ed.2d 265 (1982), and for violations of substantive constitutional rights. *See Palmer,* 697 F.2d at 1222, n. 2. For example, *Parratt* is inapplicable to eighth amendment claims aris-

ing out of a state official's medical malpractice or negligence which amounts to deliberate indifference to serious health and safety needs of prisoners. *See generally Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Withers v. Levine,* 615 F.2d 158 (4th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980). Similarly, *Parratt* would not apply to substantive due process violations resulting from a police officer's unjustified, brutal beating of a suspect, *see Henderson v. Counts,* 544 F.Supp. at 152–153, or grossly negligent shooting of a suspect which amounts to a "raw abuse of power." *Jenkins v. Averett,* 424 F.2d 1228, 1232 (4th Cir.1970). In these kinds of cases involving alleged violations of substantive constitutional rights, therefore, the presence or absence of a state remedy is irrelevant to whether a claim is stated under section 1983. Consequently, before dismissing a section 1983 action under *Parratt,* a court should scrutinize the complaint to ensure that it does not include allegations of violations of substantive constitutional rights in addition to an allegation of a procedural due process violation. *See generally Hickman v. Hudson, supra; Juncker v. Tinney, supra; Holmes v. Wampler, supra; Henderson v. Counts, supra.*

occur. Consequently, *Parratt* applies to this case.

## B.

Having decided that *Parratt* applies to this case, we must next determine whether Daniels has been deprived of liberty without due process of law. This in turn requires an evaluation of whether Virginia law provides him with a meaningful postdeprivation remedy.

Virginia law provides Daniels with a common law action for negligence.[4] Nevertheless, Daniels strenuously argues that the Virginia doctrine of sovereign immunity denies him an adequate postdeprivation remedy. *See Subica v. Hutton,* No. 81–328–AM (E.D.Va. Nov. 17, 1982) (unpublished).

In his answer, Williams invoked the defense of sovereign immunity from liability for his alleged negligence. The Supreme Court of Virginia has "listed certain factors to consider in determining whether a state employee is entitled to immunity when he or she is charged with simple negligence in the performance of some duty." *Bowers v. Commonwealth, Dept. of Highways and Transportation,* 225 Va. 245, 248, 302 S.E.2d 511, 514 (1983).

> Under such circumstances, [a court should] examine the function [the] employee was performing and the extent of the state's interest and involvement in that function. Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative . . . . Of equal importance is the degree of control and direction exercised by the state over the employee whose negligence is involved.

*James v. Jane,* 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980).

Daniels alleges that Williams negligently left a pillow on the stairway. Applying the ministerial-discretionary factor, a state court could overrule Williams's plea of immunity because the alleged negligence underlying Daniels's claim was misfeasance of a ministerial duty. *See Phelps v. Anderson,* 700 F.2d 147, 149 (4th Cir.1983); *Semler v. Psychiatric Institute,* 538 F.2d 121, 127 (4th Cir.1976); *First Virginia Bank-Colonial v. Baker,* 225 Va. 72, 301 S.E.2d 8 (1983); *Lawhorne v. Harlan,* 214 Va. 405, 200 S.E.2d 569 (1973). On the other hand, the state's interest and involvement in prison administration is great, and a state court may thus determine that Williams is entitled to immunity. *See Dalson v. Hutto,* No. LD 1131, Vol. 8, No. 1 VADA Quarterly 15 (Cir.Ct. Richmond, Nov. 29, 1982). In short, we cannot confidently predict whether sovereign immunity would apply in this case. Consequently, we must determine whether the possibility of a sovereign immunity defense deprives Daniels of an adequate postdeprivation remedy.

In responding to the argument that Nebraska's tort claims procedure did not adequately protect the plaintiff's property interest because it did not provide him with all the relief available in actions brought under section 1983, the Court held in *Parratt* that the state remedies were sufficient to satisfy the requirements of due process because the "remedies provided *could have* fully compensated the [plaintiff] for the property loss he suffered." 451 U.S. at 544, 101 S.Ct. at 1917 (emphasis added). Thus, *Parratt* does not require that a plaintiff actually receive a remedy for the deprivation of his interest. Instead, *Parratt* holds that procedural due process is satisfied if, in cases where a predeprivation hearing is impractical, the state provides a means by which the plaintiff can be compensated for his loss. In other words, under *Parratt* the requirements of due process are satisfied by the provision of a hearing before a tribunal with the power to grant a remedy. *See*

---

4. Daniels's alleged injury occurred on January 23, 1982. The Virginia Tort Claims Act, Va. Code § 8.01–195.1 *et seq.* (Supp.1982), applies only to actions accruing on or after July 1, 1982. Under the Act, Virginia is made liable for negligent acts or omissions of state employees, but "[n]otwithstanding any provision [of the Act], the individual immunity of judges, the Attorney General, Commonwealth's attorneys, and other public officers, their agents and employees from tort claims for damages is hereby preserved to the extent and degree that such persons are presently immunized." Va.Code § 8.01–195.3 (Supp.1982).

*Groves v. Cox,* 559 F.Supp. 772 (E.D.Va. 1983).

■ Daniels contends, however, that he is denied due process under *Parratt* because he could be precluded from bringing any claim in any court if his section 1983 action is dismissed and Williams's plea of immunity is sustained. While we agree that this result could deprive Daniels of a remedy, it does not follow that it would deprive him of his right to present a claim and be heard. To be sure, Daniels will be unable to litigate the merits of his claim if a state court determines that Williams is entitled to sovereign immunity. But while due process may sometimes require a state to consider the merits of a plaintiff's charge before deciding whether to terminate his claim, *see Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), it does not entitle "every civil litigant to a hearing on the merits in every case." *Id.* at 438, 102 S.Ct. at 1158. Rather, due process requires "an *opportunity* . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case . . . ." *Id., quoting Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (citations omitted). And we conclude that Virginia's common law tort action provides Daniels with a meaningful opportunity for a hearing appropriate to the nature of his claim.[5]

■ Nor does sovereign immunity itself violate due process. "For when a state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." *Ferri v. Ackerman,* 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979); *see Martinez v. California,* 444 U.S. 277, 280–283, 100 S.Ct. 553, 556–558, 62 L.Ed.2d 481 (1980).

■ Daniels further argues that the doctrine of sovereign immunity deprives him of a postdeprivation remedy at a meaningful time and in a meaningful manner. *See* 451 U.S. at 540, 101 S.Ct. at 1915. He asserts that, unlike litigation on the question of good faith in a section 1983 action, which is determined only after a full hearing on the merits, litigation on the issue of sovereign immunity precludes a hearing on the merits unless and until the plea of immunity is overruled. This may be true insofar as a determination of whether sovereign immunity applies is compared with a determination of whether qualified immunity applies in a section 1983 action. *But see Harlow v. Fitzgerald,* 457 U.S. 800, 817–819, 102 S.Ct. 2727, 2738–2739, 73 L.Ed.2d 396 (1982). Nevertheless, this argument overlooks the fact that due process is not violated by other affirmative defenses, such as the statute of limitations, which must be decided prior to litigation on the merits. And contrary to Daniels's assertion, he is no more denied a remedy at a meaningful time and in a meaningful manner by the chance that he may be required to litigate the question of sovereign immunity through the entire Virginia court system than he would be by having to appeal an adverse ruling on a plea of the statute of limitations. We therefore see no significant distinction between sovereign immunity and other defenses which persuades us that Daniels is denied an adequate postdeprivation remedy by the possibility that Williams may be entitled to immunity.

In sum, Virginia's common law tort action provides Daniels with a remedy which can fully compensate him for the alleged liberty deprivation. Thus, despite the possibility of a sovereign immunity defense, we hold that Daniels possesses a remedy which provides him with a "meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities." 451 U.S. at 541, 101 S.Ct. at 1916. Consequently, we conclude that Daniels has failed to state an actionable claim under section 1983

---

5. Our conclusion, of course, would be different if Virginia's sovereign immunity doctrine had the effect of depriving a prisoner of the right to bring a claim in state court and be heard on the issue of sovereign immunity. *See Parratt,* 451 U.S. at 551, n. 9, 101 S.Ct. at 1921, n. 9 (Powell, J., concurring in result).

because he has not been deprived of liberty without due process of law.

The judgment of the district court is AFFIRMED.