Luther Foster PERRY

v.

Dickie WALKER, et al.

Civ. A. No. 83–0759–R.

United States District Court,
E.D. Virginia,
Richmond Division.

May 1, 1984.

Luther Foster Perry, pro se.

Richard L. Jones, Petersburg, Va., James W. Hopper, Richmond, Va., for defendants.

## OPINION AND ORDER

WARRINER, District Judge.

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this complaint pursuant to 42 U.S.C. § 1983 on 19 December 1983. Defendants Walker and Petersburg Sheriff's Department filed a motion for summary judgment on 5 January 1984. On 9 January defendant Walker filed an answer. Plaintiff was notified of an opportunity to respond on 12 January and 18 January, which he did not do. The motion is now ripe for consideration. The Court has jurisdiction under 28 U.S.C. § 1343.

Plaintiff alleges that on two occasions in August 1983 he was assaulted by guard Walker. The assaults were in retaliation for plaintiff's behavior in provoking a fight between two other inmates. To state a claim under 42 U.S.C. § 1983, plaintiff must show that his constitutional rights were violated. To show a violation of due process in the context of an assault, the plaintiff must allege that the defendant intended to infringe a constitutional right through the battery or could reasonably have foreseen that infringement would be the result. *Dandridge v. Police Department of the City of Richmond,* 566 F.Supp. 152, 160 (E.D.Va.1983). At first blush, the assault alleged herein appears only to be another beating of the type dealt with by this Court in *Dandridge, Sellers v.*

*Roper,* 554 F.Supp. 202 (E.D.Va.1982), and *Brooks v. School Board of City of Richmond, Virginia,* 569 F.Supp. 1534 (E.D.Va. 1983).

In *Sellers,* the plaintiff claimed that the defendant, a guard, grabbed the plaintiff, an inmate, and forced him to bend over. He then elbowed plaintiff in the back. In *Sellers* this Court first discussed the lack of clarity in the law regarding substantive due process, and noted the lack of a clearly discernable means of determining when the use of physical force violates the Constitution. Turning to *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944), and its progeny, this Court held that "an allegation of unjustified striking alone, without a factual allegation of, for instance, a striking affecting other substantive constitutional rights of a plaintiff, simply does not state a constitutional claim." *Sellers* at 206.

In *Dandridge,* this Court considered the § 1983 claim of a plaintiff who alleged himself the victim of police brutality during arrest. The plaintiff alleged that the defendant policeman hit, kicked, and beat him. Again noting the lack of a workable standard with which to determine whether a claim of battery by a policeman amounts to a constitutional violation, the Court concluded again that it must of necessity look to the intent of the person committing the assault, and that the *sine qua non* of a constitutional tort is the defendant's "general intent to infringe the exercise of a specific constitutional right." *Dandridge* at 161.

In *Brooks* the court was faced with a § 1983 action brought by a student who complained that her teacher disciplined her unconstitutionally by piercing her upper arm with a straight pin. Again surveying the law in the area, the court concluded that under its interpretation of the Supreme Court's opinion in *Screws,* a necessary element of a constitutional tort involves the allegation of intent to violate a constitutional right. *Brooks* at 1538.

The lines that must legitimately and constitutionally be drawn between consti-

tutional torts and common law torts are complicated and entangled. Unless federal courts are to become a special tribunal for the trial of tort claims when the defendant is a State employee, there must be some simplification and disentanglement. Lawyers and judges should be able to spot the difference with some degree of confidence. There should be some order and sense in the law. In hopes that it will make sense we shall continue to follow our understanding of *Screws* and demand that each such tort, before it becomes actionable under § 1983, be motivated by a further desire to deprive the plaintiff of independently protected rights.

*Id.* at 1539.

In *Sellers, Dandridge,* and *Brooks* nothing appeared but an assault and battery in which the State employee was indifferent to any constitutional violation. The battery in those cases was motivated by other, non-constitutionally implicated purposes. This case is different in that plaintiff here alleges that defendant intended to violate a specific constitutional right to which he was entitled.

■ In the setting of the instant case, the plaintiff admits that he twice violated prison disciplinary rules by fighting with other inmates. It must be presumed that these violations were of a serious nature, serious enough to warrant as possible punishments the loss of statutory good time credits or solitary confinement. Implementation of punishment in this type of situation requires a procedural due process hearing prior to the imposition of any punishment. *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The defendants' alleged action was in violation of the constitutional safeguard enunciated in *Wolff.* Defendant herein chose to punish and discipline plaintiff on the basis of the defendant's individual judgment, unsupported by a procedural due process hearing, that the punishment

was appropriate. It is alleged, then, that defendant battered plaintiff with general intent to inflict punishment in violation of a specific constitutional right recognized in *Wolff.* Nothing of this nature existed in *Sellers, Dandridge,* or *Brooks.*

■ As to this claim, there is a material issue of fact in dispute[1], namely, whether or not defendant Walker assaulted plaintiff with the intent to punish him for plaintiff's behavior in provoking a fight between two other inmates. Thus, the action is hereby REFERRED to the United States Magistrate for resolution of the issue on the basis of an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B).

■ Plaintiff's allegations cannot be said to rise to a level of procedural due process violations, however. Under *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), procedural due process requires a post-deprivation remedy for the negligent taking of property, unless the deprivation in question was pursuant to an established State procedure. The Fourth Circuit has held the *Parratt* analysis applies to deprivations of liberty interests which do not violate substantive constitutional rights, *Daniels v. Williams,* 720 F.2d 792 (4th Cir.1983), *reh. en banc granted* (29 August 1983), and to intentional deprivations of property by random and unauthorized acts of prison officials. *Palmer v. Hudson,* 697 F.2d 1220, 1221 (4th Cir.1980), *cert. granted,* —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983).

The instant situation alleges an intentional deprivation of a liberty interest, an assault and battery. While the Fourth Circuit has not gone so far as to apply the *Parratt* analysis to this type of situation, extension of *Parratt* to it is logical. As the Fourth Circuit noted in Palmer:

> ... *Parratt's* scope cannot easily be limited to negligent deprivations of property. For, if the underlying principle is, as Justice Rehnquist stated in a plurality

---

1. The Court would note that although plaintiff failed to respond to the defendants' properly made motion for summary judgment, the plaintiff may rely upon his verified complaint as it is sufficiently detailed. *Davis v. Zahradnick,* 600 F.2d 458, 460 (4th Cir.1979).

opinion, that when no practical way to provide a pre-deprivation hearing exists, a post deprivation hearing will satisfy the dictates of procedural due process, then it as well applies to an intentional deprivation for which meaningful prior review was impractical....

[T]here is no practical mechanism by which Virginia could prevent its guards from conducting personal vendettas against prisoners other than by punishing them after the fact, nor have we been given any cause to believe that Virginia courts would be less diligent in protecting prisoners from intentionally inflicted injuries than in protecting them from negligently inflicted injuries.

*Id.* at 1222–1223.

 Other courts have extended the *Parratt* analysis to intentional deprivations of liberty interests. *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345 (1981), *cert. granted*, 458 U.S. 1120, 102 S.Ct. 3508, 73 L.Ed.2d 1382, judgment affirmed, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1982); *Ellis v. Hamilton*, 669 F.2d 510, 516–17 (7th Cir.1982), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *but see Wakinekona v. Olim*, 664 F.2d 708 (9th Cir.1981); *Bryant v. Commissioner of Social Services of City of New York*, 530 F.Supp. 1175 (S.D.N.Y.1982).[2] In *Rutledge* the plaintiff was the victim of an assault and battery, as was this plaintiff. *Rutledge* at 1352. The Ninth Circuit found, that as plaintiff had available adequate post-deprivation remedies at State law, he stated no procedural due process claim. *Id.* Virginia's Tort Claims Act provides an adequate remedy in this case. *See* Va.Code § 8.01–195.1 *et seq.* (1983 Supp.). Accordingly, plaintiff has stated no procedural due process claim.

 Plaintiff also alleges that after the first assault, he filed a grievance regarding defendant Walker, thereby putting the Sheriff's Department on notice of the danger in which the plaintiff found himself. Despite this notice, plaintiff alleges that "nothing was done to protect me against being hurt the second time." Complaint at 2. Defendants admit that plaintiff complained of an assault by Walker, but argue that physical examination of plaintiff failed to reveal any evidence of such an assault. Dolinger Affidavit at 1. If prison supervisors with knowledge of a risk of harm fail to take reasonable steps to prevent such harm, they may be liable under § 1983. *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir.), *cert. denied*, 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981); *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980). As this Court opined in *Penn v. Oliver*, 351 F.Supp. 1292, 1294 (E.D.Va.1972), however, a prisoner must show either:

a pattern of undisputed and unchecked violence or, on a different level, of an egregious failure to provide security to a particular inmate, before deprivation of a constitutional right is stated. An isolated act or omission by a prison official that allows an attack to occur and which involves only simple negligence does not, absent special circumstances, create a constitutional deprivation over which this Court has jurisdiction.

*Id.* at 1294.

 Plaintiff alleges that he informed the Sheriff's Department of a threat of an assault upon him by Guard Walker and that the Sheriff's Department "didn't investigate the assault upon me." Complaint at 2. Plaintiff's conclusory allegation cannot stand in the face of a properly made motion for summary judgment in which defendants assert that they did investigate the complaint, especially when the matter in question would likely be outside plaintiff's ken. Fed.R.Civ.P. 56(e) states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading." Plaintiff was properly notified of his obligation to respond to the motion for summa-

---

**2.** *Rutledge* and *Ellis* were cited by the Fourth Circuit in *Daniels v. Williams*, 720 F.2d 792, 796 (4th Cir.1983), in applying *Parratt* to negligent deprivations of liberty interests.

**1268**

ry judgment, *Roseboro v. Garrison*, 528 F.2d 309, 311 (4th Cir.1975), but has failed to do so other than, as noted, in a conclusory manner in his verified complaint. As no material issues of fact remain in dispute, summary judgment is hereby GRANTED to defendants on this claim.

And it is so ORDERED.