**Jose GARCIA, Conception Garcia, Celia Garcia Solis, Graciela Garcia and Julieta Garcia, Plaintiffs,**

v.

**COUNTY OF LOS ANGELES, Los Angeles Sheriff's Department, Charles Cortez and Rollin Church, Defendants.**

No. CV 81–4411–WMB.

United States District Court,
C.D. California.

April 30, 1984.

Benjamin P. Wasserman, Hermosa Beach, Cal., for plaintiffs.

Richard E. Townsend, Deputy County Counsel, Los Angeles, Cal., for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

WM. MATTHEW BYRNE, Jr., District Judge.

Plaintiffs Jose, Conception, Graciela and Julieta Garcia and Celia Garcia Solis bring this action under 42 U.S.C. § 1983 (1976) against the County of Los Angeles (County), the Los Angeles Sheriff's Department (Department) and deputy sheriffs Charles Cortez and Rollin Church. Plaintiffs allege violations of the fourth and eighth amendments, the equal protection and due process clauses of the fourteenth amendment and constitutional rights to personal security and privacy. Plaintiffs allege that on August 12, 1979, after arresting two (non-plaintiff) members of the Garcia family, defendant deputy sheriffs followed plaintiffs into the Garcia residence and there "wantonly, willfully, intentionally, maliciously and in bad faith, did severely beat plaintiffs ... causing bodily and emotional injury."

Defendants now move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Defendants argue that, (1) the complaint fails to state a 42 U.S.C. § 1983 claim because, under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the availability to plaintiffs of state tort remedies invalidates their underlying constitutional claims, and (2) neither the County nor the Sheriff's Department are proper parties to this action, the Department because it is not a legal entity with capacity to be sued and the County because it exercises no policy control over the Department.

## I. DUE PROCESS AND THE AVAILABILITY OF STATE REMEDIES

Defendants read plaintiffs' complaint as stating a claim for assault and battery

clothed in the constitutional garb of an action for deprivation of liberty without due process of law. Citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981), *aff'd sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), defendants argue that the liberty deprivation of which plaintiffs complain required only a postdeprivation remedy to satisfy due process and that, in the absence of allegations to the contrary, state tort remedies constitute such a postdeprivation remedy.

Defendants' position is correct insofar as plaintiffs allege violation of procedural due process. Defendants' argument, as discussed below, however, does not apply to any substantive constitutional claims plaintiffs assert.

### A. Parratt and Its Progeny

#### 1. Parratt v. Taylor

In *Parratt v. Taylor,* a state prisoner (Taylor) claimed deprivation of property without due process of law under section 1983 in the loss of $23.50 worth of hobby materials. Taylor contended the materials were lost as the result of prison officials' negligence in failing to follow established procedures for safeguarding prisoner mail. The Court initially differentiated Taylor's claim of due process *simpliciter,* or procedural due process, from earlier section 1983 cases decided by the Court which involved substantive claims under the fourth and eighth amendments. *Parratt,* 451 U.S. at 536, 101 S.Ct. at 1913.

Acknowledging that Taylor had satisfied the due process prerequisites of action under color of state law, property interest and deprivation of that interest, the Court turned to the manner of the deprivation. Justice Rehnquist, writing for the majority, stated:

> Nothing in [the Fourteenth] Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations "without due pro-

cess of law." *Baker v. McCollan,* 443 U.S. [137], at 145, 99 S.Ct. [2689], at 2695 [61 L.Ed.2d 433]. Our inquiry therefore must focus on whether the respondent has suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process.

*Id.* at 537, 101 S.Ct. at 1914.

The Court found that because Taylor's property deprivation stemmed from an unauthorized departure from procedure by state officials and Taylor did not allege that either the procedures were inadequate or that a predeprivation hearing was practical, due process required only a postdeprivation hearing. *Id.* at 543–44, 101 S.Ct. at 1916–17. The Court held that the state tort remedies available to Taylor satisfied this postdeprivation hearing requirement. *Id.*

#### 2. Ninth Circuit Interpretation of Parratt

The *Parratt* Court did not confront the question of whether its adequate state remedy—due process analysis would apply to deprivations of liberty as well as property. Justices Blackmun and White, concurring, opposed such a result. *Id.* at 545, 101 S.Ct. at 1917. Cases in the Ninth Circuit on the issue are not in total accord, but the weight of circuit decisions is that *Parratt* due process analysis does apply to liberty deprivations.

The Ninth Circuit first took up the question of liberty deprivations under *Parratt* in *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981), *aff'd on other grounds, sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The plaintiff in *Rutledge,* a scholarship football player at the University of Arizona, alleged violation of his civil rights when football coach Frank Kush allegedly struck him on the helmet after he made a bad punt. The Ninth

**703**

Circuit, apparently treating the claim as one for violation of procedural due process, held that it was invalid under *Parratt.* The court found that the plaintiff did not state a constitutional claim because the circumstances of the incident were such that a predeprivation hearing was impossible and state tort law provided an adequate postdeprivation remedy. *Id.*

Shortly after the *Rutledge* opinion was handed down, another Ninth Circuit panel confronted the same issue of liberty deprivations post-*Parratt* but reached an opposite result. *Wakinekona v. Olim,* 664 F.2d 708, 715 (9th Cir.1981), *rev'd on other grounds,* 456 U.S. 1005, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1983). The *Wakinekona* court, without citing *Rutledge,* refused to apply *Parratt* to the claim of a state prisoner alleging deprivation of liberty without due process in a prison transfer. *Id.*

The most recent Ninth Circuit panels to take up the issue have sided with *Rutledge. Haygood v. Younger,* 718 F.2d 1472 (9th Cir.1983); *Bretz v. Kelman,* 722 F.2d 503 (9th Cir.1983). The Ninth Circuit, however, has recently decided to rehear these cases *en banc. Haygood v. Younger, Bretz v. Kelman, Piatt v. MacDougall,* 729 F.2d 613 (9th Cir.1984). In *Haygood,* plaintiff alleged he had served more time in prison than state law warranted for his conviction. He sued state correctional officers for violation of his due process and eighth amendment rights. The court held that:

> *Parratt* applies to situations in which process prior to deprivation of liberty would not be feasible or practicable. It is the adequacy of the state postdeprivation process that is properly at issue once it is clear that predeprivation process

was neither feasible nor practicable. The distinction between deprivations of property and those of liberty in that context is unimportant.

*Haygood,* 718 F.2d at 1480.

The *Haygood* court proceeded to apply *Parratt* to plaintiff's due process claim, finding that state procedures with regard to parole, state habeas corpus and state tort law, satisfied the constitutional requirements of due process. *Id.* at 1481.

Similarly, in *Bretz v. Kelman,* 722 F.2d 503 (9th Cir.1983), another Ninth Circuit panel applied *Parratt* to an alleged deprivation of liberty without due process stemming from wrongdoing in a criminal prosecution.

Based on *Bretz* and *Haygood,* the Court finds that *Parratt* applies to procedural due process claims involving deprivation of liberty.[1]

### 3. Applying Parratt

To the extent that plaintiffs' claim for violation of due process is procedural in nature, it is invalid under *Parratt* as interpreted in the Ninth Circuit. In the arrest-type situation described in the complaint, a hearing on the use of force before its application was clearly impracticable. If force was needed, it was required immediately. Thus the Court must turn to plaintiffs' postdeprivation remedies. Defendants accurately point out that plaintiffs had tort remedies under state tort law. Plaintiffs do not contend that these were inadequate. Thus the requirement of procedural due process in this instance—an adequate postdeprivation remedy—is met and plaintiffs have not stated a valid claim for violation of procedural due process. *Parratt,* 451

---

1. Although the Court finds that the *Rutledge* approach now holds the upper hand in the Ninth Circuit, there remain rivals to it. For example, in cases involving property deprivations, one panel held that *Parratt* never applies when the deprivation is intentional *Weiss v. Lehman,* 676 F.2d 1320, 1323 (9th Cir.1982), but a later panel held that in intentional property deprivation cases, the burden is on defendant to show that a predeprivation hearing was "impractical or unduly burdensome," thus shifting the analysis to the adequacy of postdeprivation

remedies per *Parratt. Keniston v. Roberts,* 717 F.2d 1295, 1301–02 (9th Cir.1983). It is little wonder that one member of the circuit has stated "[t]his circuit's decisions are in conflict and disarray regarding whether *Parratt* applies to deprivation of liberty as well as property and intentional as well as negligent conduct." *Bretz,* 722 F.2d at 507 n. 1 (Fletcher, J., dissenting). This confusion may be alleviated by the court's decision to rehear *en banc, Haygood v. Younger, Bretz v. Kelman,* and *Piatt v. MacDougall,* 729 F.2d 613 (9th Cir.1984).

U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420; *Haygood*, 718 F.2d 1472; *Rutledge*, 660 F.2d 1345.

### B. *Parratt and Substantive Constitutional Claims*

A close examination of the Supreme Court's decision in *Parratt* and the Ninth Circuit's interpretations of it reveal that *Parratt* analysis does not apply to claims for violation of substantive constitutional rights. Rather, the analysis is peculiarly suited to claims for violation of procedural due process.

■ There are two basic elements to a claim for violation of procedural due process: (1) deprivation of a protected interest, (2) by means of inadequate procedures. Only if both elements are present is a constitutional claim stated. *See Parratt*, 451 U.S. at 537, 101 S.Ct. at 1913. *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). The *Parratt* Court focused on step two: the adequacy of procedures used in connection with a deprivation. The Court held that a plaintiff has no claim for violation of procedural due process where a predeprivation hearing is impracticable and state law supplies an adequate postdeprivation remedy. In such a case, there is no violation because the procedures are adequate.

By contrast, in analyzing a claim for violation of a substantive constitutional right, such as under the fourth or eighth amendment, a court looks only to whether there has been a deprivation, not what procedures were involved with the deprivation. Once a substantive constitutional right is infringed, no subsequent procedures can erase the violation.

The *Parratt* court recognized the distinction between procedural and substantive constitutional claims when it noted that Taylor asserted only violation of "the Due Process Clause of the Fourteenth Amendment *simpliciter*," in contrast to previous section 1983 cases before the court involving fourth amendment and eighth amendment claims. *Parratt*, 451 U.S. at 536, 101 S.Ct. at 1913, *citing Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See also id.* 451 U.S. 552–54, 101 S.Ct. at 1921–22 (Powell, J., concurring).

The Ninth Circuit in *Haygood v. Younger*, 718 F.2d 1472 implicitly acknowledged the procedural—substantive distinction in applying separate analysis to plaintiff's due process and eighth amendment claims. The distinction was also recognized in the case's discussion of exhaustion of state remedies. The *Haygood* court noted that the trial court had refused to apply *Parratt* to plaintiff's due process claim because of its belief that to do so would impose an improper exhaustion of state remedies requirement. The Supreme Court has long held that plaintiffs suing under section 1983 need not exhaust their state remedies before bringing suit in federal court. *E.g., Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The *Haygood* court rejected the trial court's analysis, explaining that *Parratt* did not create an exhaustion requirement: "*Parratt* did not deny Taylor a remedy; it defined his rights. The decision does not require that state remedies be exhausted. It held that no constitutional violation occurred." *Haygood*, 718 F.2d at 1480. *See Daniels v. Williams*, 720 F.2d 792, 794 n. 1 (4th Cir. 1983); *Bretz*, 722 F.2d 503, 507 (Fletcher, J., dissenting).

Because *Parratt* analysis applies only to procedural claims, defendants' motion to dismiss fails as to all of plaintiffs' clearly substantive claims. These are all plaintiffs' claims except that for violation of due process. With respect to plaintiffs' due process claim, the Court must determine if it is in essence procedural or substantive and, if the latter, whether it states a valid constitutional claim.

### C. *Substantive Due Process*

Plaintiffs in their complaint simply allege violation of the "right not to be deprived of

life, liberty or property without due process of law..." The parties in their arguments appear to have assumed, without discussing, that this claim is procedural in nature. If so, it falls under *Parratt*, as previously discussed. If the claim is substantive in nature, however, and if such a claim is available under the law of the Ninth Circuit, the claim may survive defendants' motion to dismiss.

1. *Defining Substantive Due Process*

■ "A 'substantive due process' claim is, fundamentally, not a claim of procedural deficiency, but, rather, a claim that the state's conduct is inherently impermissible." *Schiller v. Strangis*, 540 F.Supp. 605, 614 (D.Mass.1982). *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir.1983); *Owen v. Lash*, 682 F.2d 648, 651 (7th Cir. 1982). It represents a difficult-to-define protection from particularly outrageous official conduct which falls under no other specific constitutional protection. It is based upon

> the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning and harmful as literally to shock the conscience of the court... Numerous cases in a variety of contexts recognize it as a last line of defense against those literally outrageous abuses of official power whose very variety

makes formulation of a more precise standard impossible.

*Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980).

2. *The Law of Substantive Due Process*

Neither the Ninth Circuit nor the Supreme Court has definitively ruled upon the availability of a separate action for substantive due process in a case such as this. A number of cases decided by both courts, however, strongly suggest the validity of a separate substantive claim and several other circuits have directly so held in recent years.

The father of modern substantive due process is the case of *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In *Rochin* the Court held that police action in prying open the mouth of a suspect, administering an emetic and thus forcing him to vomit up evidence so "shocks the conscience" as to violate due process. Justice Frankfurter wrote, "Due process of law is a summarized constitutional guarantee of respect for those personal immunities which ... are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or are 'implicit in the concept of ordered liberty.' " [citations omitted] *Rochin*, 342 U.S. at 169, 72 S.Ct. at 208.[2]

The Ninth Circuit followed *Rochin* in a series of cases in which it found violations

---

**2.** In more recent years, the Supreme Court has not directly decided any substantive due process cases but neither has it ruled out the availability of such actions. In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Court found no due process violation where plaintiff had alleged false imprisonment. Justice Rehnquist, writing for the majority, employed analysis similar to substantive due process:

> We may ... assume, *arguendo*, that, depending on what procedures that State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

443 U.S. at 145, 99 S.Ct. at 2695. In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the Court found that administration of a mild form of corporal punishment did not violate process but specifically reserved the question of the actionability of severe corporal punishment under substantive due process. *Id.* at 679 n. 47, 97 S.Ct. at 1416 n. 47. *See also Parratt v. Taylor*, 451 U.S. 527, 545, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (Blackmun, J., concurring) ("I also do not understand the Court to intimate that the sole content of the Due Process Clause is procedural regularity. I continue to believe that there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process.")

of due process in claims of violence, coercion or humiliation inflicted as part of the law enforcement or judicial processes. *Meredith v. State of Arizona*, 523 F.2d 481, 484 (9th Cir.1975) (due process violation in claim of state prisoner suffering from emphysema attack struck in the solar plexus so hard as to render him "totally handicapped" for a period); *see Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir.1974) (65 year-old supplicant to the court thrown to the ground and beaten by justice of the peace); *Wiltsie v. California Dept. of Corrections*, 406 F.2d 515, 516 (9th Cir.1968) (prisoner beaten on head and body with fists and billy clubs by six guards); *Brown v. Brown*, 368 F.2d 992, 993–4 and n. 2 (9th Cir. 1966), *cert. denied*, 385 U.S. 868, 87 S.Ct. 133, 17 L.Ed.2d 95 (defendant kicked and beaten in attempt to compel confession and other statements); *see also York v. Story*, 324 F.2d 450, 455–56 (9th Cir.1963) (violation of constitutional right of privacy for police to take and display, without justification, nude photographs of female assault complainant).

The *Meredith* line of cases appears to remain good law in the Ninth Circuit despite the questions raised by *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345. In *Rutledge*, the court acknowleged the *Meredith* and *Gregory* cases and their analysis which rested on the severity of injury alleged. *Id.* at 1352. The *Rutledge* court then stated that it "need not pursue" the issue of how severe an injury must be to state a claim because "we believe the teaching of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), provides the guidance we must accept." *Id.* The court went on to assume that the assault and battery alleged by plaintiff stated a liberty deprivation and held that under the circumstances only a postdeprivation remedy was required by due process and state tort law satisfied this require-

ment. *Id.* Thus, while the *Rutledge* decision casts some doubt on the continuing vitality of the *Meredith* line of cases, the court did not explicitly overrule them. Under the basic rule of stare decisis, this Court should harmonize, if possible, the *Rutledge* decision with the well-established precedent of the *Meredith* line of cases. This may be accomplished by reading *Rutledge* as involving procedural rather than substantive due process. The assault and battery alleged by plaintiff was relatively minor, a slap on a football helmet following a bad punt. Such an allegation would not have supported a valid claim for violation of substantive due process.

In the post-*Parratt* era, the Fourth Circuit has taken the lead in recognizing the validity of claims for violation of substantive due process. The circuit has upheld such claims in a variety of contexts. *Daniels v. Williams*, 720 F.2d 792, 796 n. 3 (4th Cir.1983) (recognizing claims in law enforcement context); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980) (substantive due process claim for severe and unjustified corporal punishment; *Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir.1970) (grossly negligent shooting of suspect by police). *See also Palmer v. Hudson*, 697 F.2d 1220, 1222 n. 2 (4th Cir.1983), *cert. granted*, —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983). The Fifth Circuit has allowed a substantive due process claim for a policeman's unprovoked and unjustified striking of a tourist who was photographing an arrest. *Shillingford v. Holmes*, 634 F.2d 263, 265–66 (5th Cir.1981). Judge Friendly, writing for the Second Circuit in an oft-cited case, laid out a number of factors by which to determine whether a substantive due process claim is stated in the prison context. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).[3]

---

3. In *Johnson v. Glick*, a prisoner alleged that he had been struck twice on the head by a guard. The court recognized that "[c]ertainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery..." The court held that the

determination of whether a constitutional violation had occurred depended upon a weighing of such factors as the need for force, the amount applied, the extent of injury and whether the force had been applied in a good faith effort to

A number of district courts have applied substantive due process analysis to actions in which *Parratt*-type procedural analysis was also employed. *Juncker v. Tinney,* 549 F.Supp. 574, 580–81 (D.Md.1982); *Holmes v. Wampler,* 546 F.Supp. 500, 505 (E.D.Va.1982); *Henderson v. Counts,* 544 F.Supp. 149, 152–53 (E.D.Va.1982); *Schiller v. Strangis,* 540 F.Supp. 605, 613–19 (D.Mass.1982); *Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177, 1180–81 (M.D.Tenn.1982).

■ Based on the above, the Court concludes that a substantive due process claim may be stated separate and distinct from one for procedural due process. The Court further finds that at this early stage in the proceedings, plaintiffs' due process claim may be read as substantive in nature. The claim is based upon allegations that defendant deputy sheriffs came to the Garcia residence at 11:15 p.m. on the night of August 12, 1979 to investigate a complaint of a blocked driveway. Plaintiffs allege the officers spoke to plaintiffs' sons in a "menacing, belligerent and threatening tone" and then arrested and handcuffed them. On being asked by plaintiffs Jose and Conception Garcia why their sons were arrested, the officers allegedly responded in the same tone. The Garcias then retreated into their house, followed by the deputy sheriffs. Once inside, the officers allegedly "wantonly, willfully, intentionally, maliciously and in bad faith, did severely beat plaintiffs..." If these factual allegations are fully proven, defendants' conduct may have been sufficiently outrageous to constitute a violation of substantive due process. In order to ultimately prevail, however, plaintiffs must prove outrageous conduct.

## II. PROPER PARTIES

Defendants move to dismiss the Los Angeles Sheriff's Department and the County of Los Angeles, arguing that, for different reasons, neither is a proper party to this action. Defendant assert that the Sheriff's Department is not a legal entity under state law and thus does not have the capacity to be sued in federal court. Fed.R. Civ.P. 17(b). With regard to the County, defendants argue that state law severely restricts the County's power over the functions of the Sheriff's Department so that the actions of Department employees may not be attributed to a policy or custom of the County, a prerequisite for section 1983 liability. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978).

### 1. *Sheriff's Department*

■ The Sheriff's Department's capacity to be sued in federal court is determined by state law. Fed.R.Civ.P. 17(b). The defendant Sheriff's Department argues that it lacks such capacity because it is not defined as a public entity against which claims may be filed under California's scheme for tort suits against government entities. Cal.Govt.Code § 811.2 (West 1980).[1] Plaintiffs do not specifically respond to this argument. The Court finds that the Sheriff's Department is not a separate legal entity and is thus not a proper party to this action. *See Ragusa v. Streator Police Dept.,* 530 F.Supp. 814, 815 n. 1 (N.D.Ill.1981).

### 2. *County of Los Angeles*

■ The Court need not reach the issue of whether the County of Los Angeles, by virtue of its limited supervision of the Sheriff's Department, may be liable for Department custom or policy under section 1983 because it is apparent that plaintiffs have not adequately pleaded such policy or custom on the part of either the Department or the County. *See Ybarra v. Reno Thun-*

maintain discipline or in a bad faith effort to injure. *Johnson v. Glick,* 481 F.2d at 1033.

**4.** Cal.Govt.Code § 811.2 states:

"Public entity" includes the State, the Regents of the University of California, a county, city, district public authority, public agency, and any other political subdivision or public corporation in the State.

*derbird Mobile Home Village,* 723 F.2d 675, 681 (9th Cir.1984). Plaintiffs conclusorily allege that the defendant sheriff's deputies acted "in their official capacities as agents and employees" of the Department and County, and "under color of their official capacities and under color of the statutes, regulations and ordinances of the State of California, and the County of Los Angeles..." Complaint ¶¶ 10, 11. Such pleading of mere legal conclusions without further specification is insufficient to state a valid claim. *Sherman v. Yakahi,* 549 F.2d 1287, 1290 (9th Cir.1977). While plaintiffs suggest in their opposition papers to this motion that they are alleging a policy, custom, practice or usage of employing and retaining deputy sheriffs who have "a propensity for violence and cruelty, and for inflicting unnecessary, unreasonable and excessive force upon all manner of persons with whom they come in contact," Plaintiffs' Supplemental Opposition at 19–20, these allegations are not contained in the complaint.

Based on the above, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss is GRANTED as to:

(1) the Los Angeles Sheriff's Department, and

(2) the County of Los Angeles, with leave to amend within twenty days of the date of this Order.

In all other respects, the motion to dismiss is DENIED.